# Third District Court of Appeal
## State of Florida

Opinion filed October 27, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2126
Lower Tribunal Nos. 15-0361-P, 13-127-P
_____

**Asgaard Fund, L.P., etc.,**
Appellant/Cross-Appellee,

vs.

**MM80 Oceanside Holdings, LLC, etc.,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Sodhi Spoont PLLC, and Eric M. Sodhi and Nathaniel M. Edenfield; Hershoff, Lupino & Yagel, LLP, and James S. Lupino (Tavernier), for appellant/cross-appellee.

The Smith Law Firm, and Brett Tyler Smith, and Wayne LaRue Smith, for appellee/cross-appellant.

Before LOGUE, LINDSEY, and LOBREE, JJ.

LINDSEY, J.

Appellant/Cross-Appellee Asgaard Fund, L.P. (Plaintiff below) appeals from a final judgment, following a bench trial, entered in favor of Appellee/Cross-Appellant MM80 Oceanside Holdings, LLC (Defendant below) on all six claims presented in Asgaard's Second Amended Complaint for foreclosure of non-residential property.  The trial court concluded that two promissory notes signed by MM80's agent were unenforceable because they were not delivered to Asgaard.  Because "[a]n unissued instrument . . . is binding on the maker or drawer[,]" section 673.1051(2), Florida Statutes (2021), we reverse.  In its cross-appeal, MM80 challenges the trial court's order denying its motion to amend to assert a compulsory counterclaim for fraud in the inducement.  Because amendments ought to be allowed freely and there is no clear danger of prejudice, abuse, or futility, we also reverse the order denying MM80's motion to amend.

## I.     BACKGROUND

MM80 was formed in 2012 for the purpose of purchasing the Galleria Shopping Center in Islamorada, Florida.[1]   Asgaard loaned MM80

---

[1] MM80 is wholly owned by Vensure Employer Services, Inc.  Vensure, an employee leasing agency, needed a cash infusion to sustain its operations. Vensure formed MM80 to borrow money from Asgaard for two purposes: (1) to purchase the Galleria to be used as collateral and (2) to use the remaining loan proceeds so Vensure could renew a workers compensation insurance policy.

approximately $2,061,856.00, and MM80's manager, Julie Kean, signed two promissory notes promising to pay Asgaard the original amount of the loan plus interest.[2]  It is undisputed that Asgaard funded the loan[3] and that it was secured by two mortgages on the Galleria.  The deal closed in October 2012, and title to the Galleria was transferred to MM80.

After closing, MM80 began collecting rent and managing the Galleria. MM80 also started making the required payments to Asgaard.[4]  However, MM80 only made payments for the first two months and then defaulted. According to Ms. Kean, MM80 continued collecting rent and managing the Galleria through April 2018 "without interruption."   MM80 collected over $600,000 in rent from its Galleria tenants.

Asgaard initiated the underlying foreclosure action in June 2015. Though Asgaard had scanned copies of the Notes, it was unable to locate

---

[2] Note A was in the amount of $515,464.00, and Note B was in the amount of $1,546,392.00.

[3] MM80 disputes the exact amount, asserting that Asgaard only funded $1,944,752.12 and not the full $2,061,856.00.  The evidence relied on in Asgaard's initial brief also indicates the amount was less than the full $2,061,856.00.  We need not resolve this dispute as it can be addressed in the trial court on remand.

[4] MM80 also received a $271,601.85 credit for the sale of real property in Georgia that also secured the loans from Asgaard.  This amount was applied to reduce the balance that MM80 owed.

the originals. Consequently, Asgaard included two counts to reestablish Note A and Note B in its Complaint. During a bench trial, the evidence established that although MM80 intended to deliver the Notes,[5] they ended up in the possession of Gary Hirst, the attorney who formed MM80. When counsel for Asgaard found out that Hirst had the Notes, he sent a letter to Hirst's attorney demanding them.[6] Hirst's attorney never responded, and the original Notes were never produced.

Following the bench trial, the court entered final judgment in favor of MM80, finding that Asgaard could not enforce the Notes or Mortgages because the original Notes were never delivered. However, because MM80 had benefited from the transaction, the court awarded an equitable judgment in favor of Asgaard in the amount of the principal plus statutory interest.[7] Asgaard timely appealed. MM80 cross-appeals from an order denying its motion to assert a compulsory counterclaim for fraud in the inducement.

## II. ANALYSIS

---

[5] Alex Campos, MM80's corporate representative, testified that the Notes should have been delivered to Asgaard after Ms. Kean signed them.

[6] At time of trial, Hirst was incarcerated in a federal correctional institution.

[7] The equitable judgment does not provide Asgaard with the contractual interest rate and other amounts, including attorney's fees, that Asgaard may be entitled to under the Notes and Mortgages.

We review the trial court's findings of fact to ensure they are supported by competent substantial evidence.  See Musi v. Credo, LLC, 273 So. 3d 93, 95 (Fla. 3d DCA 2019).  "The trial court's legal conclusions, however, are subject to de novo review."  Id.

The evidence below conclusively establishes that MM80 intended to borrow money from Asgaard and that Asgaard did in fact lend money to MM80.  The evidence also establishes that MM80's agent signed two Promissory Notes promising to repay the loan to Asgaard.  Finally, MM80's corporate representative, Mr. Campos, unequivocally testified that MM80 intended to deliver the Notes to Asgaard.  These facts are undisputed.  The primary issue before this Court is whether Asgaard can enforce the Notes and Mortgages when the original Notes were not actually delivered.

Section 673.1051, Florida Statute (2021), pertains to delivery or issuance of an instrument.  The statute provides, in pertinent part, as follows:

> (1) The term "issue" means the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person.
>
> (2) *An unissued instrument*, or an unissued incomplete instrument that is completed, *is binding on the maker or drawer, but nonissuance is a defense*. An instrument that is conditionally issued or is issued for a special purpose is binding on the maker or drawer, but failure of the

5

> condition or special purpose to be fulfilled is a defense.

Id. (emphasis added). As set forth in the statute, an unissued, or undelivered, instrument is binding on maker or the drawer, but nonissuance may be raised as a defense. See also 6 Fla. Jur. 2d Bills and Notes § 387 (Sept. 2021 update) ("Under Article 3 of the Uniform Commercial Code, an unissued instrument, or an unissued incomplete instrument that is completed, is binding on the maker or drawer, but nonissuance is a defense.").

Here, MM80 was the "maker" and was therefore bound by the Notes.[8] Moreover, although MM80 raised three affirmative defenses, nonissuance, or nondelivery, was not one of them. Further, the parties agreed to entry of an order striking all three of MM80's affirmative defenses. See Johnson v. Smith, 84 So. 2d 722, 724 (Fla. 1956) ("[I]n a suit upon a promissory note, if between the original parties thereto, nondelivery is a valid defense. While there may be a presumption of delivery, the presumption is rebuttable, with the maker who denies the delivery carrying the burden of proof."); 6 Fla. Jur. 2d Bills and Notes § 387 ("Nondelivery or conditional delivery must be pleaded as an affirmative defense.").

---

[8] "(e) 'Maker' means a person who signs or is identified in a note as a person undertaking to pay." § 673.1031(e), Fla. Stat. (2021).

6

Because an unissued instrument is not automatically unenforceable and MM80 did not raise nondelivery as an affirmative defense, we reverse the final judgment against Asgaard.  With respect to MM80's cross-appeal challenging the trial court's denial of its motion to assert a compulsory counterclaim for fraud in the inducement, we also reverse.  See Am. Integrity Ins. Co. v. Estrada, 276 So. 3d 905, 910 (Fla. 3d DCA 2019) ("Amendments to pleadings ought to be allowed freely unless there is a clear danger of prejudice, abuse, or futility. If such dangers cannot be clearly established, the trial court abuses its discretion by denying the party's motion for leave to amend the pleading." (quoting RV-7 Prop., Inc. v. Stefani De La O, Inc., 187 So. 3d 915, 916-17 (Fla. 3d DCA 2016))).[9]

Reversed and remanded.

---

[9] Here, Asgaard would not have been prejudiced by the amendment.  MM80 sought leave to amend well before the discovery cut-off date and the scheduled trial date.

7